## 52429. HARTFORD ACCIDENT & INDEMNITY COMPANY v. BOOKER.

Stolz, Judge.

The defendant insurance company appeals from a judgment on the pleadings in favor of the plaintiff, Edward Booker. The defendant issued an insurance policy containing an uninsured motorist endorsement in favor of Shorty's Sanitation Service, Inc. The policy covered the commercial vehicles used by Shorty's, whose business the policy described as "Sanitary Pick Up" and "Garbage Ashes or Refuse Collecting including completed operations."

A claim under this uninsured motorist endorsement

arose on August 28, 1972, when the plaintiff was employed by Shorty's Sanitation Service and was acting within the scope of his employment. The plaintiff parked the garbage truck that he was driving close to the curb of the road, got out of the truck, and obtained a large garbage collection container from the truck. He then walked to a point about thirty feet from the garbage truck, where he was struck by an uninsured vehicle. The plaintiff received judgment against the driver and owner of the uninsured vehicle in the amount of $27,500. Then this suit was initiated against the defendant with the plaintiff contending that he was covered under the uninsured motorist endorsement and seeking judgment in the amount of $10,000.

1. The uninsured motorist portion of the policy describes persons insured to include "any other person while occupying an insured highway vehicle." The uninsured motorist statute, Code Ann. § 56-407.1 (b) (Ga. L. 1963, p. 588, as amended) describes insured persons to include "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." Where there is a conflict in an insurance policy and the uninsured motorist statute, the statute controls. *State Farm &c. Ins. Co. v. Murphy,* 226 Ga. 710 (177 SE2d 257); *Travelers Indem. Co. v. Williams,* 119 Ga. App. 414 (167 SE2d 174).

2. Since use of a vehicle determines who is insured for purposes of the statute, the definition of the word "use" becomes a central issue in this case. In Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 FSupp. 509, 511 (E.D.S.C., 1965), an action identical to the instant case in all material respects, the court said: "Exact definition of the term 'use' is elusive, and is not capable of a definition which will leave everyone 'comfortable.' Whether or not an injury arose from the 'use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply 'remoteness,' but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and

particularly when it is still being 'utilized.' "

3. In Gupton, supra, a service station employee was using a pickup truck owned by his employer to deliver gasoline to a stalled automobile. The driver of the stalled automobile was an uninsured motorist. The employee was pouring gasoline out of a gasoline can into the automobile of the uninsured motorist when that vehicle suddenly backed into him, causing his injuries. The court held that the employee was covered by the employer's insurance policy because, although outside of the truck, he was "using" the truck within the meaning of the uninsured motorist statute. In Gupton it should be noted that the uninsured motorist statute in issue was adopted by the South Carolina legislature in 1962, one year prior to the initial enactment of the Uninsured Motorist Act by the General Assembly of the State of Georgia. The South Carolina Act defines the term "insured" in the exact same words as does Code Ann. § 56-407.1.

Another persuasive case is Owens v. Ocean Acc. & Guarantee Corp., 194 Ark. 817 (109 SW2d 928), which dealt with whether certain injuries arose out of the "ownership, maintenance, or use" of a certain ambulance. The injured party, who fell out of the ambulance stretcher on the sidewalk some distance from the ambulance, was held to be covered by the policy. The court noted that the use of the stretcher to transport the injured party outside of the ambulance "was an essential transaction in connection with use of the automobile as an ambulance." 109 SW2d, p. 930. The utilization of the large garbage container outside of the truck by the plaintiff in the instant case was just as much an "essential transaction in connection with the use" of the garbage truck as was the stretcher in Owens or the gas can in Gupton an "essential transaction in connection with the use" of the ambulance or pickup truck, respectively. See also Panhandle Steel Products Co. v. Fidelity Union Cas. Co., 23 SW2d 799 (Tex. Civ. App.) (unloading of steel from delivery truck was "use").

4. Several cases with similar factual situations in which the definition of "use" was in issue were cited by the defendant, and must be distinguished from Owens, Gupton, and the instant case. In Ins. Co. of North America

v. Perry, 204 Va. 833 (134 SE2d 418), a policeman was struck by an uninsured motorist while in the act of serving a warrant 164 feet away from the police cruiser. The court held that the policeman was not an insured individual under the city's policy covering the cruiser because he was not "using" the vehicle at that time.

"Whether or not an injury arose from the 'use' of a motor vehicle . . . depends upon the factual context of each case." Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 FSupp. 509, 511, supra. Although we are hesitant to delineate an arbitrary distance from a vehicle beyond which a person can no longer be "using" it, apparently the delivery of a warrant 164 feet away was determined by the Virginia court to be too distant. Furthermore, in the language of Gupton, the delivery of a warrant is not necessarily an "essential transaction in connection with the use" of a police cruiser as is the use of a stretcher to an ambulance, a gas can to a service station pickup truck, or a garbage collection container to a dump truck.

In *Morgan v. New York Cas. Co.*, 54 Ga. App. 620 (188 SE 581), the plaintiff used his vehicle to deliver coal to a certain location. The coal entered the premises through a coal chute on the sidewalk. When the plaintiff departed that location, he left the coal chute unattended, and later that evening a pedestrian fell into the chute and injured himself. In a suit by the pedestrian against the plaintiff, the plaintiff was forced to defend at his expense when the defendant insurance company refused to do so. The policy required the defendant to defend suits arising "by reason of the ownership, maintenance, or use" of the plaintiff's truck. The court held that a suit for the negligent leaving of an open coal chute which had no direct connection, either physically or otherwise, to the truck, was not a suit arising from the "use" of the plaintiff's truck. The court noted that the coal chute would have been used to transport the coal into the building regardless of how the coal arrived at the location in question.

In *Ocean Acc. &c. Corp. v. J. B. Pound Hotel Co.*, 69 Ga. App. 447 (26 SE2d 116), a pedestrian slipped and fell in a pool of oil which had leaked from a passing tank truck owned by the plaintiff hotel and insured by the defendant

insurance company for use only as a motor vehicle, as opposed to a lubricating oil purveyor. 69 Ga. App., p. 450. The truck had leaked the oil less than an hour earlier. Like *Morgan,* the insurance policy covered situations arising from the ownership, maintenance, or use of the vehicle, and the defendant refused to defend when the plaintiff was sued by the injured party. Again the court decided in favor of the insurance company, holding that the oil spill did not arise from the "use" of the truck as a motor vehicle, but from the activity of the load on the truck. The court emphasized that the truck was not insured specifically to haul oil. This distinction, although hard to comprehend, is certainly far removed from the facts of the instant case, where the injured party was near to the truck in both distance and time, and engaged in the purpose for which the truck was created and insured.

5. In defining the word "use" of the garbage truck, we must look to the contemplation of the parties in entering into the insurance contract. It is clear from the insurance contract that this vehicle was to be used in the business of "Sanitary Pick Up," and that this included "Garbage Ashes or Refuse Collecting including completed operations." Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.

The intent of the parties involved was considered to be of importance in Gupton, supra, where the court said: "It is all too obvious that it was within the contemplation of the parties that the truck would be used as a service station truck and that the operation of delivering gasoline on the highways was a necessary and incidental adjunct ... The hazards an employee exposes himself to in venturing upon the highway when using the truck for purposes of the delivery of gasoline is a situation which the Act was designed to cover." 241 FSupp. p. 512.

*Judgment affirmed. Bell, C. J., and Clark, J., concur.*

ARGUED JULY 12, 1976 — DECIDED OCTOBER 18, 1976.

*Burnside, Dye, Miller & Bowen, A. Montague Miller, James B. Wall,* for appellant.

*Nicholson, Fleming & Blanchard, James M. Thompson,* for appellee.