[No. 15714-4-II.    Division Two.    April 20, 1995.]

ALLEN K. CHERRY, ET AL, *Appellants*, v. TRUCK INSURANCE EXCHANGE, ET AL, *Respondents*.

*Douglas Fredrick Foley* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for appellants.

*John Aden Barlow* and *Walstead Mertsching Husemoen Donaldson & Barlow,* for respondents.

HOUGHTON, J. — Allen K. Cherry, an emergency service tow truck operator, was injured on a service call while helping an uninsured, stranded motorist. Cherry[1] filed a lawsuit against the insurer of the emergency service tow truck, Truck Insurance Exchange (Exchange), seeking coverage under the underinsured motorist (UIM) provisions of the policy. On cross motions for summary judgment, the trial court concluded that Cherry was not "using" the tow truck at the time of his injury, granted defendant's motion for summary judgment, and denied plaintiffs' cross motion. This court previously issued an unpublished opinion affirming the trial court. Cherry moved for reconsideration of that

---

[1]Cherry's wife, Victoria Cherry, is also a Plaintiff, but her involvement is not pertinent to this opinion.

opinion. We now grant reconsideration, vacate our former opinion, reverse the trial court's granting of summary judgment to Exchange, and grant Cherry's motion for summary judgment.

## FACTS

On November 20, 1988, Cherry operated an emergency service tow truck for Castle Rock Texaco in Cowlitz County. He was sent by his employer on a AAA emergency service call in his employer's AAA emergency service tow truck to help a "stranded motorist". The disabled vehicle was at a truck stop. Cherry arrived at the scene after dark, sometime between 7 and 8 p.m. He pulled the truck "right in front" of the disabled vehicle, positioning it so that its headlights and overhead lights illuminated the disabled vehicle. Another motorist had given "a jump" to the disabled vehicle, which was running when Cherry arrived.

The driver of the disabled vehicle told Cherry her lights had begun to dim and her engine had sputtered on the highway. Assuming an alternator problem, Cherry asked the driver to turn off her engine while he checked for a loose or broken fan belt. He told the driver not to turn over the engine. He then opened the hood of the disabled vehicle, using a flashlight to look under the hood and see if any belts were broken. Cherry testified he did not need the flashlight to illuminate the vehicle, but that he used it as a precaution when looking under the hood.

Seeing no broken belts, Cherry reached into the engine compartment to check for one that was loose. While Cherry's hand was near the bottom of the alternator belt, the driver started the engine. Cherry's hand was caught, he was lifted partially into the engine compartment, his arm was cut by the fan, and he was further injured when he sharply jerked his arm out of the engine.

Because neither the stranded motorist nor her vehicle was insured, Cherry filed a claim with Exchange, seeking coverage under the UIM provisions of his employer's policy on the truck. Exchange denied the claim, saying that Cherry was not "using" the truck at the time of injury as required by the policy language.

Cherry then brought suit in Cowlitz County Superior Court, seeking a declaratory judgment. He moved for summary judgment, arguing that he was "using" the emergency service truck at the time he was injured and, therefore, was covered by the UIM provisions of his employer's policy. Exchange also moved for summary judgment, arguing that Cherry was not using his employer's truck because: (1) his activities were not causally related to his use of the truck; (2) he was not "vehicle oriented"; and (3) he was not engaged in a transaction essential to the use of the emergency service vehicle. The trial court agreed with Exchange's arguments, granted it summary judgment, and denied Cherry's motion for summary judgment. Cherry appeals.

ANALYSIS

■■ In reviewing a trial court's decision on a motion for summary judgment of dismissal, the appellate court engages in the same inquiry as the trial court. See *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990). A summary judgment of dismissal may be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). A material fact is one upon which the outcome of the litigation depends. See *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

■■ The interpretation of the meaning of an insurance contract is a question of law. *Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 654, 835 P.2d 1036 (1992). "The policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)).

■ In Washington, a requirement of vehicle use is deemed contained in UIM endorsements "by force of [the UIM] statute and judicial construction". *Rau v. Liberty Mut. Ins. Co.*, 21

Wn. App. 326, 331, 585 P.2d 157 (1978). Underlying the UIM statute is a strong public policy to ensure coverage for innocent victims of uninsured drivers. *See, e.g., Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 207-08, 643 P.2d 441 (1982). Therefore, coverage here depends upon whether Cherry was "using" the emergency service tow truck at the time he was injured.

■ To determine whether Cherry was using the emergency service truck for purposes of establishing coverage under UIM provisions, we apply the following 4-factor test from *Rau*:

(1) there must be a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

(Citations omitted.) *Rau*, at 334; *see also Roller*, 115 Wn.2d at 687; *Sears*, at 639. The four factors are conjunctive, so failure to satisfy any one of them precludes coverage. *See Roller*, at 687-89. Factor (2) is not disputed, but the other factors are.

In *Rau*, while on a delivery route, a truck driver stopped to ask directions to his destination, crossing four lanes of traffic to inquire of another of his company's drivers. On his way back to his truck, he was struck by an uninsured driver. Division One of this court found the driver was "using" the truck.[2]

---

[2]A recent decision of the Supreme Court of Hawaii is critical of the analytical approach taken in *Rau*. In *Dawes v. First Ins. Co.*, 77 Hawaii 117, 883 P.2d 38 (1994), several persons were riding on a highway in the insured vehicle, including the insured's son, Shimp, and his friend, Bockhorn. The vehicle overheated. The stranded riders walked down the side of the highway to an airport seeking help. After they traveled about a mile, Bockhorn was struck and killed by a passing car.

In declining to adopt the *Rau* test, the *Dawes* court criticizes it on two general grounds. First, it asserts the test creates anomalous results. The hypothetical anomaly *Dawes* raises is that under *Rau*, had both Shimp and Bockhorn been

As Cherry notes, *Rau* relies upon several cases from other jurisdictions to derive its 4-factor test. These cases reveal the underlying explanations for and meaning of *Rau*.

In promulgating the first factor, causal relation or connection,[3] *Rau* cites *Federated Mut. Implement & Hardware Ins. Co. v. Gupton*, 357 F.2d 155 (4th Cir. 1966). In *Gupton*, an

---

struck, Shimp could have recovered as a "named insured", but Bockhorn could not have recovered as an "other insured". Although *Dawes* asserts this "anomaly" results from the *Rau* test itself, it actually arises from the terms of UIM statutes in both Hawaii and Washington, which create the distinction between named insureds and other insureds (named insureds are always covered against uninsured motorists, while other insureds must be related or connected to the insured vehicle); this statutory distinction gives rise to their disparate treatment.

The *Dawes* court seemingly ignores this legislatively mandated distinction, creating a "chain of events" test that essentially allows coverage if a person was somehow connected to the insured vehicle at some undetermined time prior to the injury-producing event; as we discuss *infra*, the *Dawes* "chain of events test" seems to lack instrumental value or operative content, giving no meaning to the statutory term "using".

The second basis of *Dawes*'s criticism of *Rau* is that application of the test is "nothing more than a conclusory and self-serving exercise in semantic game playing". *Dawes*, 883 P.2d at 48. The *Rau* analysis need not be a conclusory and self-serving semantic game, however, nor can we abandon the test in light of our Supreme Court's adoption of it. Rather, we must look behind the mere terminology of the test to discern its underlying meaning and purpose. In light both of Cherry's arguments in his motion for reconsideration, and also of the noted criticisms of *Rau*, we believe that our initial opinion was too conclusory and that a more searching inquiry is required.

[3]The causal relation portion of this *Rau* factor is, of course, tautological: Whether a person is "using" a vehicle is determined by whether a causal relation exists between the injury and the "use" of the vehicle; this begs the very question, what is "using"? Moreover, it is difficult to understand how an abstraction, "use", could cause an injury. This factor cannot mean, however, that the insured vehicle must cause the injury, because the UIM statute and the insurance policy in question require that the uninsured vehicle cause the injury; such an interpretation would create a non sequitur, because there is no statutory requirement that the insured vehicle cause injury.

If we remove the tautology and the non sequitur, it then appears the court should not look for a causal relation between the injury and the use, but a non-causal "connection" between the injured person and the insured vehicle. This understanding is supported by the disjunctive language of the test ("causal relation or connection between the injury and the use of the insured vehicle"); it is also supported by the UIM statute's requirement of some connection between the injured person and the insured vehicle. (RCW 48.22.005 distinguishes between named insureds and other insureds, the latter including only persons "Occupying or using the insured automobile with the permission of the named insured".)

uninsured driver's car ran out of gas. The driver walked to the nearest gas station, purchased gas, and had an attendant drive her back to her car in the station's truck, which he parked 6 feet behind her car. While the attendant filled the gas tank, she got in her car and started it; the car unexpectedly backed into the truck, pinning the attendant between the car and the truck and severely injuring him. The federal district court held the attendant was "using" the truck for purposes of mandatory UIM coverage, reasoning that injuries arising out of service calls in the station truck were within the contemplation of the parties when they included policy language covering employees using the truck. *Federated Mut. Implement & Hardware Ins. Co. v. Gupton*, 241 F. Supp. 509, 512 (E.D.S.C. 1965). The Fourth Circuit affirmed, noting the plain meaning of "using" is quite broad in this context. *Gupton*, 357 F.2d at 157.

For the second factor, physical proximity, *Rau* looked to *Hartford Accident & Indem. Co. v. Booker*, 140 Ga. App. 3, 230 S.E.2d 70 (1976), which in turn looked to *Gupton* for the proximity requirement. In *Booker*, a garbage collector took a container from the garbage truck and walked 30 feet to collect garbage, where he was struck by an uninsured motorist. *Rau* also looked to *Booker*, and to a case cited in *Booker*, *Owens v. Ocean Accident & Guar. Corp.*, 194 Ark. 817, 109 S.W.2d 928 (1937), for the fourth factor, a transaction essential to the use of the vehicle. *Owens* found liability coverage under an ambulance insurance policy for a victim who fell off a stretcher near the ambulance, because carrying the victim on a stretcher "was an essential transaction in connection

Therefore, the injured person must demonstrate some logical connection to the insured vehicle that will reasonably substitute for the named insured's automatic connection, *i.e.*, purchase of the insurance. This logical connection may be shown, for instance, by demonstrating that the injured person plausibly was acting within the scope of the permission to use the vehicle given by the named insured.

The *Dawes* court essentially adopts this noncausal connection factor as its sole test for determining whether an injured person is a UIM insured; as a result, a former occupant of an insured vehicle, on foot 1 mile away, is nonetheless found to be "using" the vehicle. We believe the proximity and essential transaction factors are necessary to control the otherwise unlimited scope of the noncausal connection test.

with use of the automobile as an ambulance". *Owens*, at 822. Applying the proximity and essential transaction factors to find coverage under the UIM policy on the garbage truck, the *Booker* court stated:

> Common sense tells us . . . the parties certainly contemplated that the garbage truck would be loaded and unloaded . . . that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck . . . to collect the garbage.

*Booker*, at 7.

Finally, the *Rau* court apparently created the third factor, vehicle oriented versus highway or sidewalk oriented, from *Insurance Co. of N. Am. v. Perry*, 204 Va. 833, 134 S.E.2d 418 (1964), which it found not controlling. In *Perry,* an on-duty police officer drove his partner in their cruiser to a certain neighborhood to serve a warrant. After they parked the cruiser and pocketed the keys, they walked 164 feet away from the cruiser to serve the warrant; the officer was then struck and killed by an uninsured motorist. In finding the officer was not using the cruiser when struck, the *Perry* court stated

> . . . it is . . . crucial . . . that while the legislature provided for coverage to the named insured . . . "while in a motor vehicle or otherwise", it expressly omitted . . . this language with relation to one "who uses" the insured vehicle with permission.

*Perry*, at 837. The *Perry* court thus determined an officer 164 feet away from a parked cruiser could not be using it.

Although the *Rau* court derived its "vehicle oriented" factor from *Perry*, the Virginia Supreme Court has authoritatively stated that *Perry* turns on the proximity and essential transaction factors, without reference to a "vehicle oriented" factor. *See Great Am. Ins. Co. v. Cassell*, 239 Va. 421, 424, 389 S.E.2d 476, 477 (1990) (distinguishing *Perry* thus: "Unlike the police officer in *Perry*, Cassell [a firefighter fighting a car fire] was ["only 20 to 25 feet away from", and] engaged

in a transaction essential to the use of the fire truck when he was killed").[4]

Ultimately, a strictly read "vehicle oriented" factor could create an internal inconsistency in *Rau's* 4-part test. *Gupton, Booker*, and *Owens* envision a "common sense" analysis of the circumstances, broadly looking to the reasonable expectations of the insured, and to the means and purposes of the particular use in question. By contrast, *Rau's* "vehicle oriented" factor focuses narrowly on the position of the injured person and the injured person's precise orientation toward or away from the insured vehicle.

To avoid this potential inconsistency, the vehicle oriented factor must be read in the context of the other factors. Seen in this light, this factor emerges as a restatement of the proximity and essential transaction factors, upon which the *Perry* case actually turns. That is, the determining factors in *Perry* were the officer's obvious lack of proximity to the cruiser, together with his embarking on a transaction (serving a warrant) unconnected to, much less essential to, his use of the cruiser as transportation. In short, he was not vehicle oriented.

█ As a result, the issue in such cases may be generally stated: Whether a common sense understanding of the particular use at issue indicates a connection exists between the injured person and the insured vehicle, thus bringing the event within the reasonable expectations of the insured when contracting for coverage of persons using the insured vehicle. In the instant case, the question presented therefore may be stated: Would a reasonable named insured (here, Castle Rock Texaco) expect coverage for an injury to its employee while the employee was engaged in an authorized emergency service call to help a stranded motorist under the UIM coverage on the emergency service tow truck?

---

[4]If *Perry* had turned on "vehicle orientation", *Cassell* would not have distinguished it, because the firefighter was *returning equipment to* the fire truck when he was killed.

■ Applying the *Rau* factors as explained above to this question, a connection exists between Cherry and the emergency service tow truck, because he was using that truck with permission to make an emergency service call, and he was actually helping the stranded motorist when he was injured. As Exchange admits, Cherry was also in reasonably close geographic proximity to the tow truck when the accident occurred. Moreover, Cherry was engaged in a transaction essential to using the emergency service tow truck (*i.e.*, helping a stranded motorist) which, under a common sense understanding, includes both activities such as checking the stranded motorist's belts, and also the use of the lights on the emergency service truck to see at night and to ensure Cherry's safety while helping the stranded motorist. His proximity to and continuing use of the truck also indicate he was vehicle oriented rather than highway or sidewalk oriented. In sum, a reasonable person purchasing insurance would expect an injury sustained while helping a stranded motorist to be covered by a UIM policy covering employees using the emergency service tow truck.

Nothing in *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990) contradicts this analysis. In *Roller*, the injured person was in the insured vehicle when his ex-wife rammed it with her uninsured car. He got out of the insured vehicle, went into the house to call the police, and then came back outside and stood in the street in front of his ex-wife's car, writing down her license plate number. She intentionally ran him over.

The Supreme Court first held this was not an accident, so UIM coverage did not apply. *Roller*, at 686. While there was "arguably" a connection between the insured vehicle and the injuries, and while the court did not reach the question of proximity, the injured person was neither engaged in a transaction essential to the use of the insured vehicle, nor was he vehicle oriented.

The court did not explain causal connection, proximity, vehicle orientation, or its reasoning in applying these fac-

tors,[5] but the result in *Roller* would not be different under our analysis of the *Rau* factors. As in *Roller*, our analysis would indicate a connection existed between the injured person and the insured vehicle, because he had ridden to the scene in that vehicle. While *Roller* did not reach proximity, it appears the injured person was relatively close to the insured vehicle when he was injured. Also as in *Roller*, however, our analysis would indicate the injured person's coming back out of the house to stand in the street in front of his angry ex-wife's uninsured car and copy down her license number was clearly not a transaction essential to the particular use of the insured vehicle (transportation to a neighbor's house). Finally, our analysis mandates the further conclusion, again like *Roller's*, that the injured person was not vehicle oriented when injured, because he was not engaged in an essential transaction.[6]

Exchange implicitly argues that if the connection test does not require a causal relation, it could be liable when the employee merely drives to work in the tow truck, and then is injured while working on a vehicle in the service station's parking lot within reasonable geographic proximity to the tow truck. Exchange's concern is misplaced. In this hypothetical, the employee would not be engaged in a transaction essential to the particular use of the tow truck (*i.e.*, getting to work) and, therefore, could not be vehicle oriented; thus, two of the *Rau* factors would not be met, and the employee's injuries would not be covered.

Moreover, the insurer's analysis of the vehicle oriented factor is revealing. Exchange argues Cherry's attention was directed to the uninsured vehicle, rather than the emergency service tow truck. Referring to *Booker*, it asserts the

[5]The Supreme Court did address the essential transaction factor, adopting language from Judge Worswick's concurring and dissenting opinion in *Roller v. Stonewall Ins. Co.*, 55 Wn. App. 758, 766, 780 P.2d 278 (1989); this language, however, was referring to the "causal connection" factor rather than the essential transaction factor.

[6]Similarly, nothing in *Sears* contradicts our analysis, because that court held, without analysis, that a passenger injured while riding in an insured vehicle is using that vehicle under *Rau*.

*Booker* claimant "was in the process of loading garbage onto the insured garbage truck at the time he was injured". Our reading of *Booker,* however, reveals the injured person was 30 feet away from the insured vehicle when he was injured. On the other hand, if such constitutes being "in the process of loading garbage onto the insured garbage truck", then Cherry's actions in helping a stranded motorist were "in the process of" an emergency service call. Nothing in *Booker* implies the injured person's attention was toward or away from the insured garbage truck. Ultimately, as the above analysis explains, the fortuitous direction of the injured person's attention just prior to being injured is simply irrelevant.

In conclusion, the named insured, Castle Rock Texaco, would reasonably have anticipated that Cherry's injuries suffered while aiding an uninsured stranded motorist on an authorized emergency service call in the emergency service tow truck would be covered under the UIM provisions regarding that truck. Our prior opinion is vacated, the trial court is reversed, and Cherry's motion for summary judgment is granted.

SEINFELD, C.J., and MORGAN, J., concur.

Review denied at 127 Wn.2d 1012 (1995).