[No. 17364-6-II.    Division Two.    July 25, 1995.]

FRANCINE BECKMAN, *Appellant*, v. DONALD R. L. CONNOLLY, ET AL., *Respondents.*

*John Arthur Miller* of *Miller & Dart PS Inc.*, for appellant.

*Edward S. Winskill*, of *Davies Pearson PC*, and *David Michael Jacobi*, of *Wilson Smith Cochran & Dickerson*, for respondents.

MORGAN, J. — Francine Beckman was injured while

riding as a passenger in a pickup truck driven by Donald Connolly, Jr. She sued two insurers of the truck's owner to establish coverage, and they moved for summary judgment, which was granted. We affirm.

Donald Connolly, Sr. (Senior) is the father of Donald Connolly, Jr. (Junior). In July 1990, Senior was the sole proprietor of a shake mill called D&L Cedar Products. In connection with the mill, he owned a forklift and a five-gallon gas can. He also owned a pickup truck.

On the evening of July 10, 1990, Junior, age seventeen, asked if he could use the pickup for social purposes. After responding affirmatively, Senior remembered that the forklift needed gas, and he asked Junior to pick up some gas while he was out.

Taking the gas can, Junior drove to the Handy Stop in Kapowsin. There, he filled the gas can and placed it inside the cab of the truck. He did not put it in the truck's cargo bed because the bed had no tailgate.

Between home and the store, Junior picked up a friend, Angela Kilmore. After leaving the store, he picked up another friend, Francine Beckman. The three decided to drive to a rural lookout, but soon turned around because the road was too rough. While returning to town, Junior cracked open his window and lit a cigarette. An explosion ensued, and flames engulfed the cab. Junior lost control of the truck, which went off the road and over an embankment. Junior and Kilmore were able to jump out, but Beckman could not get her door open. Junior pulled her out, but not before she was burned severely.

At the time of the accident, Senior had four insurance policies. One was a business automobile policy written by Liberty Northwest Insurance Company. Another was a commercial general liability (CGL) policy, also written by Liberty. The third was an auto policy written by Farmers Insurance Company of Washington. The fourth was a homeowner's policy, also written by Farmers.

On November 11, 1991, Beckman, through her father as guardian ad litem, brought a declaratory judgment action

for the purpose of establishing coverage under Senior's four policies. Farmers admitted coverage under its auto policy, but it and Liberty moved for summary judgment with respect to the other three policies. The trial court granted the motions.

■ On appeal, we engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate only "if the pleadings, depositions, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c).

Preliminarily, Beckman advances many theories on how the accident could have happened and, as a result, argues that the case involves issues of material fact. Like the trial court, however, we think there is only one reasonable inference concerning how the accident occurred: Gas fumes collected in the cab of the truck and ignited when Junior lit his cigarette. Thus, there are no material issues of fact.

Having disposed of this preliminary issue, we turn now to the three policies. We discuss the business auto policy first, and the other two policies thereafter.

## I

The business auto policy afforded coverage only for "covered autos" that fell in what Liberty labelled as categories 8 and 9. Category 8 included:

> HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households".[1]

Category 9 included:

> "NONOWNED" AUTOS ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connec-

---

[1]Clerk's Papers at 13.

tion with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs."[2]

Elsewhere in the policy, "autos" were defined as any land motor vehicle, subject to an exception not pertinent here.

Beckman argues that the pickup was "borrowed" at the time of the accident. She reasons (1) that D&L is an entity separate from Senior's marital community, and (2) that when the accident occurred, Senior as owner of D&L was "borrowing" the pickup from Senior as a member of his marital community. In our view, however, the marital community and D&L are not separate entities, *Public Employees Mut. Ins. Co. v. Kelly*, 60 Wn. App. 610, 614, 805 P.2d 822, *review denied*, 116 Wn.2d 1031 (1991); *Progressive Northwest Inc. v. Haker*, 55 Wn. App. 828, 831, 780 P.2d 919 (1989), and one does not "borrow" from oneself. *Webster's Third New International Dictionary* 256 (to "borrow" is "to receive temporarily *from another*" (italics ours)). Thus, the pickup was not "borrowed" at the time of the accident.

Returning to the policy language, we hold that Senior's pickup did not fall within Category 8, because it was not leased, hired, rented or borrowed. Nor did it fall in Category 9, because it was owned by Senior, and because it was not leased, hired, rented or borrowed. Senior's pickup was not an insured vehicle, and the business auto policy did not afford coverage.

## II

The CGL and homeowner's policies contain similar language and thus generate similar issues. In the CGL policy, Liberty agreed to pay, among other things, "sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

---

[2]Clerk's Papers at 13.

which this insurance applies."[3] It excluded, however, " 'bodily injury' or 'property damage' arising out of the . . . use . . . of any . . . 'auto' . . . owned . . . by . . . any insured."[4]

In the homeowner's policy, Farmers agreed to pay, among other things, "all damages from an occurrence which an insured is legally liable to pay because of bodily injury . . . covered by this policy. . . ."[5] It excluded, however, "bodily injury . . . arising out of . . . use . . . of . . . a motor vehicle owned . . . by . . . an insured."[6]

Here, neither party disputes that the pickup was owned by an insured. Thus, the policy language generates two questions: (A) Was Beckman "using" the pickup at the time of her bodily injury, and (B) if so, did her bodily injury "arise out of" that use?

In arguing these questions, both parties cite and primarily rely on underinsured motorist cases. Thus, we do likewise. Further, we observe that the underinsured motorist cases can and should be divided according to the two questions we have identified. For example, in cases like *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 686-89, 801 P.2d 207 (1990) (section II); *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 762 P.2d 1141 (1988); *Cherry v. Truck Ins. Exch.*, 77 Wn. App. 557, 892 P.2d 768 (1995); and *Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 585 P.2d 157 (1978), the primary question was whether the claimant was "using" the insured vehicle. But in cases like *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 856 P.2d 1095 (1993); *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979); *Heringlake v. State Farm Fire & Casualty Co., Inc.*, 74 Wn. App. 179, 872 P.2d 539 (1994); *Public Employees Mut. Ins. Co. v. Schlea*, 63 Wn. App. 107, 817 P.2d 878 (1991); *Insurance Co. of N.*

[3]Clerk's Papers at 26.

[4]Clerk's Papers at 27.

[5]Clerk's Papers at 53.

[6]Clerk's Papers at 54.

*Am. v. Insurance Co. of Pennsylvania*, 17 Wn. App. 331, 562 P.2d 1004 (1977), *review denied*, 89 Wn.2d 1013 (1978), and *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976), the claimant's "use" of the vehicle was undisputed or apparent, and the primary question was whether the accident or injury "arose out of" such use.[7]

## A

■ "The term 'use' usually is construed to include all proper uses of an automobile." *Transamerica*, 92 Wn.2d at 26. Not surprisingly, then, a passenger "uses" a vehicle as he or she rides in it. *Roller*, 115 Wn.2d at 687; *Sears*, 111 Wn.2d at 641. *Sears* expressly overruled *Dobosh v. Rocky Mountain Fire & Casualty Co.*, 43 Wn. App. 467, 717 P.2d 793, *review denied*, 106 Wn.2d 1011 (1986), which had held that "the term 'using' . . . does not encompass merely occupying a vehicle as a passenger." *See Sears*, 111 Wn.2d at 639; *Dobosh*, 43 Wn. App. at 470.

Beckman argues that certain factors recited in *Roller, Sears*, and *Rau* are not met, and thus that she was not "using" the pickup even though she was a passenger in it. In each of the cases cited, the court said the criteria for whether an injury arises out of the use of a motor vehicle are that:

> (1) [t]here must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Roller*, 115 Wn.2d at 687; *Sears*, 111 Wn.2d at 639; *Rau*, 21 Wn. App. at 334. We label these the *Rau* factors, because they were first announced in that case.

---

[7]A third question, not involved here, is whether the event or injury was accidental. *See Roller*, 115 Wn.2d at 683-86 (section I); *Detweiler v. J.C. Penney Casualty Ins. Co.*, 110 Wn.2d 99, 102-09, 751 P.2d 282 (1988) (issue one).

■ The second, third and fourth *Rau* factors pertain to whether Beckman was "using" the pickup. The first *Rau* factor pertains to whether Beckman's injuries "arose out of" her use of the pickup. *See Transamerica*, 92 Wn.2d at 26. The question presently under discussion is whether Beckman was "using" the pickup. Thus, we consider the second, third and fourth factors here, and the first factor in the next portion of our discussion.

To understand how the second, third and fourth *Rau* factors affect this case, we examine *Roller v. Stonewall Ins. Co.* There, Flattum drove Roller and his daughter to a babysitter's house. After they arrived, McKay, Roller's ex-wife, repeatedly rammed Flattum's car with her own. Roller got out and was injured while taking down McKay's license plate number. The Supreme Court said:

> While this court recently held that a guest passenger is "using" an insured vehicle for underinsured motorist coverage when he rides in the car, it still remains necessary to analyze whether Roller was "using" the car after he exited from Flattum's automobile. . . . During the initial contact between McKay's car and Flattum's car, Roller was a passenger who was using the car. However, based on the *Sears* analysis, we hold that Roller was not "using" the car when he left the car to call the police and record the license plate number of McKay's vehicle.

*Roller*, 115 Wn.2d at 687. The court went on to apply the *Rau* factors, *Roller*, 115 Wn.2d at 687, and to rule that the third and fourth factors were not met. *Roller*, 115 Wn.2d at 688, 689. It concluded by reiterating that Roller was not "using" Flattum's car at the time he was injured. *Roller*, 115 Wn.2d at 689.

■ We think *Roller* clarifies the applicability of the second, third and fourth *Rau* factors. Those factors are not needed to determine that a driver or passenger is "us-

ing" a car while riding in it.[8] They are needed, however, to determine whether the driver or passenger who has exited a car is still "using" it at the time he or she is injured. *See, e.g., Roller v. Stonewall Ins. Co.* (passenger); *Rau v. Liberty Mut. Ins. Co.* (driver); *Cherry v. Truck Ins. Exch.* (driver). Here, Beckman was a passenger in the pickup at the time she was injured, so she was "using" the pickup regardless of whether the second, third and fourth *Rau* factors are satisfied.

### B

Having concluded that Beckman was "using" the pickup, we turn to whether her injuries "arose out of" that use. Because this connotes a causal connection, *Transamerica*, 92 Wn.2d at 26, we have returned to the first *Rau* factor.

■■ "The phrase 'arising out of' is . . . ordinarily understood to mean 'originating from', 'having its origin in', 'growing out of', or 'flowing from'." *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986); *see also Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 707, 850 P.2d 533 (1993). Here, then, the phrase means that the claimed injury must have originated from, had its origin in, grown out of, or flowed from, the use of the vehicle. In alternative terms, "the vehicle must contribute in some fashion toward producing the injury; the vehicle must be more than the coincidental place in which the injury occurred." *State Farm Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. at 543; *cf. Mutual of Enumclaw*, 122 Wn.2d at 162 (construing somewhat different policy language); *Heringlake*, 74 Wn. App. at 190

---

[8]Alternatively, it can be said that the second, third and fourth *Rau* factors are automatically met when the claimant is a passenger. *See Sears*, 111 Wn.2d at 639.

(same). This is the only causal connection required,[9] and the "use" need not be a "proximate" cause of the occurrence or injury. *Detweiler v. J.C. Penney Ins. Co.*, 110 Wn.2d 99, 109, 751 P.2d 282 (1988); *Transamerica*, 92 Wn.2d at 26; *Toll Bridge Auth.*, 54 Wn. App. at 407.

Here, Beckman, Junior, the gas can and its contents were all being transported by the truck at the time of the explosion. More importantly, the gas fumes that exploded, the ensuing flames, and Beckman were all confined by the cab of the truck. It follows that the accident would not have happened as it did but for the use of the vehicle; that Beckman's injuries originated from, had their origin with, grew out of, or flowed from her use of the truck; that the truck causally "contributed in some fashion toward producing the injury"; and that the truck was "more than a coincidental place at which the injury occurred." *See Detweiler*, 110 Wn.2d at 109 (injury arose out of use of truck where shooter fired at truck as it was passing, and truck deflected bullet fragments back into shooter). Like the trial court, we conclude that Beckman's injuries "arose out of" the use of the truck.

We would reach the same result if we used the analysis described in *Insurance Co. of N. Am. v. Insurance Co. of Pennsylvania*. There, a helicopter pilot dropped a lighted cigarette to the ground below, starting a forest fire in which a firefighter later died. The question presented by the policy language was whether the occurrence or death "arose out of" the use of the helicopter. Quoting an automobile case, Division One said:

> The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.

[9]We mused in two recent footnotes about the nature of the required causal connection. *Cherry v. Truck Ins. Exch.*, 77 Wn. App. at 563 n.3; *Heringlake*, 74 Wn. App. at 190 n.11. Those footnotes are not holdings, and thus they do not conflict with what we have said here.

*Insurance Co. of N. Am.*, 17 Wn. App. at 334-35 (quoting *Westchester Fire Ins. Co. v. Continental Ins. Cos.*, 126 N.J. Super. 29, 38-39, 312 A.2d 664 (1973), *aff'd*, 65 N.J. 152, 319 A.2d 732 (1974)); *see Cherry*, 77 Wn. App. at 565; *Heringlake*, 74 Wn. App. at 193-94. Division One went on to hold that the act of smoking in a moving vehicle was commonplace, and thus "within the contemplation of the parties as a reasonably expected event arising out of the use of the helicopter." *Insurance Co. of N. Am.*, 17 Wn. App. at 335. The same reasoning applies here, the result being that Beckman's injuries arose out of the use of the truck.

Although Division One has rejected the so-called concurrent causation rule in cases of this sort, *Krempl*, 69 Wn. App. at 707, Beckman asserts that the rule applies here. She says that the accident had two causes, Junior's lighting a cigarette with gas fumes in the cab and Junior's losing control of the truck after the explosion. She says the first of these was not associated with the truck, and thus is a cause that warrants coverage.

We assume, without so holding, that Junior's act of lighting a cigarette should be seen as a separate, concurrent cause. Even so, it arose out of the use of the truck. *Insurance Co. of N. Am. v. Insurance Co. of Pennsylvania*, 17 Wn. App. at 334-35. Thus, *both* causes identified by Beckman arose out of the use of the truck, and the concurrent causation rule, if viable, does not apply.

In summary, the business auto policy does not provide coverage because the truck was not a hired or nonowned vehicle. The CGL and homeowner's policies do not provide coverage because Beckman's injuries arose out of her use of the truck. We conclude the trial court did not err in ruling as it did.

Affirmed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.