[No. 47675-1-I. Division One. June 3, 2002.]

JAMES K. BUTZBERGER, *as Personal Representative, Respondent,* v. FRANK FOSTER, ET AL., *Defendants,* ALLSTATE INSURANCE COMPANY, *Respondent,* T.H.E. INSURANCE COMPANY, *Appellant.*

*William S. Clement* and *Satwant K. Atwal* (of *Gardner, Bond, Trabolsi, St. Louis & Clement, P.L.L.C.*), for appellant.

*Bradley A. Maxa* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*) and *Steven J. Thomas*, for respondents.

Cox, A.C.J. — T.H.E. Insurance Company appeals a summary judgment ruling that Jeffrey Butzberger, the deceased, was "using" an automobile that T.H.E. insured. He had left the automobile by the side of the roadway, and was attempting to rescue the driver of an overturned pickup truck when he was struck and killed by an underinsured motorist. The personal representative of the estate of Butzberger cross-appeals another summary judgment ruling that the deceased was not "using" the overturned truck, which Allstate Insurance Company insured, at the time of the accident.

We hold that Butzberger was "using" the overturned pickup truck, which Allstate insured, and was entitled to uninsured motorist (UIM) coverage under the Allstate policy. Butzberger was not "using" the automobile that T.H.E. insured because he was neither engaged in a transaction essential to the use of that automobile nor was there a causal connection between his injury and the use of that automobile when he was struck. We further hold that Butzberger is entitled to attorney fees against Allstate. We reverse both judgments, and remand for entry of judgment consistent with this opinion.

Early on a dark and rainy morning in November 1995, Frank Foster was driving his pickup truck north on Interstate 5 when he lost control of the vehicle. He hit an obstruction and the truck overturned, remaining on its side within the lanes of oncoming traffic. When the truck came to rest, Foster was still in his seat belt, hanging upside down.

Shortly thereafter, Jeffrey Butzberger arrived at the scene. He was driving to work in an automobile owned by Cascade Distributing that T.H.E. insured. He pulled to the side of the highway and parked the car about 75 feet from the overturned truck. Butzberger ran to the overturned

truck, spoke with Foster through the driver's door window, and asked if Foster was all right. Thirty to 45 seconds later, while Butzberger and Foster were still talking, a northbound driver of a van collided with the pickup. Butzberger was thrown by the van's impact with the truck and died at the scene of head injuries.

Butzberger's estate sued Foster, the two insurance companies, and others not pertinent to this appeal. The trial court granted summary judgment on several claims. The court ruled that the T.H.E. policy for the Cascade automobile provided UIM coverage for Butzberger. Accordingly, the court awarded attorney fees against T.H.E. in favor of Butzberger. The court also ruled that the Allstate policy for the overturned truck did not provide UIM coverage for Butzberger.

T.H.E. appeals, and Butzberger cross appeals.

### "USE" UNDER ALLSTATE'S POLICY

Butzberger argues that the court erred in granting summary judgment in favor of Allstate. Specifically, he argues that he was "using" Foster's pickup truck and is entitled to UIM coverage. We agree.

We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[2] We review questions of law de novo.[3]

The material facts are undisputed. Thus, we focus on whether Allstate was entitled to judgment as a matter of law.

---

[1] CR 56(c).

[2] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

■ The interpretation of insurance policy language is a question of law.[4] The policy should be given a fair, reasonable, and sensible construction, as would be given to the contract by the average person purchasing insurance.[5] Underlying the UIM statute is a strong public policy to ensure coverage for innocent victims of uninsured drivers.[6] The purpose of uninsured motorist coverage is to permit the injured party to recover those damages he or she would have received if the tortfeasor had been insured.[7]

■ Under the liability provisions of the Allstate policy, any person "using" the vehicle with the named insured's permission is covered. The statutory policy of RCW 48.22.030 " 'vitiates any attempt to make the meaning of insured for purposes of uninsured motorist coverage narrower than the meaning of that term under the primary liability section of the policy.' "[8] Thus, Butzberger may establish a right to UIM coverage under Allstate's policy by showing that he was "using" the pickup truck at the time of the accident.

■ The policy does not define the term "using." But *Transamerica Insurance Group v. United Pacific Insurance Co.* establishes that the term is broad and includes all proper uses of a vehicle.[9] Our case law also establishes the "general criteria for determining whether a person is using

---

[4] *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

[5] *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

[6] *Cherry v. Truck Ins. Exch.*, 77 Wn. App. 557, 561, 892 P.2d 768, *review denied*, 127 Wn.2d 1012 (1995) (citing *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 207-08, 643 P.2d 441 (1982)).

[7] *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990).

[8] *Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 328-29, 585 P.2d 157 (1978) (quoting *Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 443, 563 P.2d 815 (1977)).

[9] *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

a vehicle and thus insured under a UIM endorsement."[10] Our Supreme Court, in *Sears v. Grange Insurance Association,* adopted the "general criteria" set out in a four-part test by this court in *Rau v. Liberty Mutual Insurance Co.* That test requires that:

> "(1) [T]here must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time."[11]

In *Rau,* a truck driver parked his employer's truck and crossed four lanes of traffic on foot to ask directions. As he returned to his truck, he was struck by an uninsured motorist while he was in one of the lanes of traffic. The impact occurred about 20 feet from where he parked the truck he had been driving.[12]

The court noted that "whether a person can be considered as 'using' a motor vehicle and thus an insured under an uninsured motorist endorsement depends on the factual context of each case."[13] It then examined several cases from other jurisdictions to develop its four-part test.

Citing *Hartford Accident & Indemnity Co. v. Booker,*[14] the *Rau* court noted that Booker was a garbage truck driver who was struck by an uninsured motorist while he was picking up garbage some 30 feet from the garbage truck. The *Booker* court held there was UIM coverage under the truck's policy. The *Rau* court quoted that court's explanation of its holding:

---

[10] *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 638, 762 P.2d 1141 (1988).

[11] *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 639, 762 P.2d 1141 (1988) (quoting *Rau,* 21 Wn. App. at 334).

[12] *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 327, 585 P.2d 157 (1978).

[13] *Rau,* 21 Wn. App. at 334.

[14] 140 Ga. App. 3, 230 S.E.2d 70 (1976).

*In defining the word "use" of the garbage truck, we must look to the contemplation of the parties in entering into the insurance contract. . . .* Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.[15]

Likewise, the *Rau* court also cited *Federated Mutual Implement & Hardware Insurance Co. v. Gupton*,[16] in which a federal court held that a service station employee was "using" his employer's insured truck for insurance coverage purposes. The driver of a disabled car accidentally backed into the employee while he was putting gas in the car.

The *Rau* court cited other cases to establish two of the parts of its test.[17] And, citing *Owens v. Ocean Accident & Guarantee Corp.*,[18] the *Rau* court held that the fourth part of its test required engagement "in a transaction essential to the use of the [insured] vehicle at the time [of the injury]." There, a patient who fell off an ambulance stretcher some distance from the ambulance was covered by the ambulance's liability coverage. Because the conveyance of the patient was essential to the use of the automobile as an ambulance, as distinct from its use as a motor vehicle, there was coverage.[19]

Synthesizing the principles of these cases, this court applied the four factors to conclude that Rau was using the delivery truck at the time he was struck. We stated that:

---

[15] *Booker*, 140 Ga. App. at 7, 230 S.E.2d at 73, *quoted in Rau*, 21 Wn. App. at 332-33 (emphasis added).

[16] 357 F.2d 155 (4th Cir. 1966).

[17] *E.g., Ins. Co. of N. Am. v. Perry*, 204 Va. 833, 134 S.E.2d 418, 421 (1964) (illustrates geographical proximity and vehicle orientation prongs: police officer 164 feet away from his parked car and "engaged in the act of serving a warrant" when he was struck by an uninsured motorist was not covered).

[18] 194 Ark. 817, 109 S.W.2d 928 (1937).

[19] *Owens*, 109 S.W.2d at 930.

*Common sense tells us, as it did the court which considered a similar event in Booker, that the parties contemplated the driver of a delivery truck on his route might well be expected to have to occasionally leave the truck briefly to ask directions.* The driver had left the truck to seek directions as to where to make a delivery, and was returning to his truck and was 20 feet from it at the time he was struck by the uninsured motorist.[20]

In *Cherry v. Truck Insurance Exchange,* Division Two of this court extensively discussed and applied the *Rau* factors. There, the court considered whether a tow truck operator, Cherry, was "using" his truck for purposes of insurance coverage under the tow truck's policy. Cherry was injured while examining an uninsured motorist's vehicle. He parked the tow truck in front of the disabled car so that its headlights and overhead lights illuminated the car. The uninsured motorist started the engine, accidentally injuring Cherry while his arm was in the engine compartment.[21]

The court applied the *Rau* factors, and determined that the test was met. The court concluded that a reasonable person purchasing insurance would expect an injury sustained while helping a stranded motorist to be covered by a UIM policy covering employees using the emergency service tow truck.[22]

■■ Here, the primary question is whether one who comes to the aid of a motorist trapped inside an overturned insured vehicle on a highway is "using" that vehicle within the reasonable expectations of persons buying insurance. Those expectations relate, in part, to the policies underlying UIM coverage that our statutes express. We conclude that the facts of this case require that we answer this question affirmatively.

---

[20] *Rau,* 21 Wn. App. at 334-35 (emphasis added).

[21] *Cherry v. Truck Ins. Exch.,* 77 Wn. App. 557, 559, 892 P.2d 768, *review denied,* 127 Wn.2d 1012 (1995).

[22] *Cherry,* 77 Wn. App. at 566.

Our Supreme Court's analysis in *Roller v. Stonewall Insurance Co.* is instructive.[23] There, Daniel Roller was a passenger in the insured car while an angry uninsured motorist rammed it. After the bumpers of the two cars locked, Roller exited the car to call police and then stood in the street to write down the license plate number of the car that had rammed him.[24] The angry motorist ran down Roller in the street.[25]

In addressing the first element of the *Rau* test, the court focused on whether Roller was "using" the insured car after he exited it and when the uninsured motorist ran him down in the street.[26] The court stated that "[b]y leaving the insured vehicle to call the police and record the necessary information for a claim, Roller was participating in an activity that arguably related to the use of the insured vehicle."[27] Although the court went on to hold that other elements of the test were not met, the court's analysis of "use" is significant. If one engaged in the activities described above while standing in the street is "arguably" using the insured vehicle, so too was Butzberger in this case. He is even more directly linked to the insured vehicle in this case because he was coming to the aid of Foster in the overturned pickup at the time the van collided with the pickup, killing Butzberger. We conclude that any person buying insurance would reasonably believe that one coming to his or her assistance in this situation would be covered by UIM protection. And the underlying policy of UIM coverage supports that conclusion.

Having established that Butzberger was using the vehicle that Allstate insured, we consider the other factors of the test. There is a causal connection between the use and the death in this case. While engaged in the rescue effort,

---

[23] 115 Wn.2d 679, 801 P.2d 207 (1990).

[24] *Roller*, 115 Wn.2d at 681.

[25] *Roller*, 115 Wn.2d at 681.

[26] *Roller*, 115 Wn.2d at 687-88.

[27] *Roller*, 115 Wn.2d at 687.

Butzberger and the pickup he was near were hit by the van driven by the uninsured motorist. Moreover, there is no serious question that the proximity element is met. The record shows that Butzberger was within a foot or so of the pickup at the time of the injury, well within the distance at issue in *Rau*. Likewise, he was "vehicle oriented," as the cases use that term. He was speaking with the driver of the insured vehicle in an attempt to render assistance at the time of the collision.

The final question is whether Butzberger was engaged in a transaction essential to the use of Foster's pickup, which Allstate insured. Unquestionably he was. We can think of nothing more "essential" than a rescue mission by one speaking with the occupant of an overturned vehicle while trying to render assistance at the time of the injury. Any other conclusion is without support either in the relevant case authority or this record.[28]

Allstate attempts to distinguish *Rau*, arguing a novel and unconvincing "stranger" theory. Under this theory, Allstate argues that the *Rau* case is not applicable to a person who has never been either a passenger or driver of the insured vehicle.[29]

While it is true that most cases deal with situations in which the person seeking UIM coverage had once been within the insured vehicle, that is not a prerequisite. The *Rau* test, adopted by our Supreme Court in *Sears*, does not contain such a requirement. Rather, only some connection with the use of the insured vehicle is required within the broad confines stated in *Transamerica*.

---

[28] *Cherry*, 77 Wn. App. at 566.

[29] Allstate suggests that rejecting its stranger argument would open up coverage to "(1) someone standing next to the insured vehicle talking to an occupant, (2) someone taking a photograph of the insured vehicle, (3) someone walking toward the insured vehicle, (4) someone chasing after the insured vehicle, (5) a homeless person soliciting money from the driver of the insured vehicle, (6) a burglar attempting to break into the insured vehicle, (7) a vandal spraying paint on the insured vehicle, (8) someone collecting money at a toll booth or parking lot, and (9) someone directing the insured vehicle through a construction zone or accident scene." Br. of Resp't/Cross-Appellant at 16.

We note further that Allstate fails to cite persuasive authority to support its argument. Allstate misplaces its reliance on *Beckman v. Connolly*.[30] That case is inapposite.

There, Division Two of this court applied the *Rau* test piecemeal to determine if the victim was covered by a homeowner's policy that excluded coverage for injuries arising out of use of a vehicle.[31] The court held that the second, third and fourth factors were not needed to determine whether a passenger in a vehicle was using the vehicle, alternatively explaining that the factors are automatically satisfied by a passenger.[32] Allstate's assertion that this language means that the test is never applicable except where the person has occupied the vehicle is unfounded.

T.H.E. argues that the court in *Cherry* abandoned the *Rau* test. That argument is contrary to the explicit language of *Cherry*[33] and the analysis applied in that case. We need not further address this argument.

In sum, all four factors of the *Rau* test were met here. Summary judgment in favor of Allstate was not correct. Rather, we hold, as a matter of law, that summary judgment in favor of Butzberger is appropriate.

Butzberger also argues that the court erred by ruling that he was not "occupying" the vehicle at the time of the accident. We will not decide this question because we hold that he was "using" the vehicle, thus qualifying for coverage under the policy.

---

[30] 79 Wn. App. 265, 898 P.2d 357 (1995).

[31] *Beckman*, 79 Wn. App. at 270.

[32] *Beckman*, 79 Wn. App. at 272-73.

[33] In a footnote discussing criticism of the *Rau* test, the court stated that "[t]he *Rau* analysis need not be a conclusory and self-serving semantic game, however, nor can we abandon the test in light of our Supreme Court's adoption of it." *Cherry*, 77 Wn. App. at 561 n.2.

## "USE" UNDER T.H.E.'S POLICY

T.H.E. argues that Butzberger was not "using" Cascade's automobile, which T.H.E. insured. We agree.

The *Rau* factors are conjunctive. Thus, if one factor is not satisfied we need not address the others.

The estate has failed to demonstrate the fourth factor, the requirement that the injured person be engaged in a transaction essential to the use of the insured vehicle. Allstate and the estate argue that it is essential to stop a vehicle and offer assistance when an accident occurs in the road ahead of one's vehicle. The estate urges this court to adopt a public policy stance on the issue favoring rescuers. The essence of this view is that there is a common understanding and expectation that one should assist when an accident occurs.

While we have no problem with a public policy that encourages rescuers, nothing shows that Butzberger's actions in leaving the Cascade automobile, which T.H.E. insured, to help Foster in his overturned pickup was a transaction essential to the use of *the automobile*. Rescuing Foster was not essential to some specialized use of the automobile, as conveyance of a patient on a stretcher to the ambulance was essential to the use of the ambulance as such in *Owens*. The Cascade vehicle was not an aid vehicle or ambulance.

Moreover, there is nothing in the record to show that Cascade is in the business of providing aid cars. Likewise, Butzberger's professional status as a nurse did not transform the vehicle into an ambulance. It is the use of the insured vehicle, not the professional skills of its driver, that is relevant. In short, there is no showing here of the fourth element required under the *Rau* test.

We also note that the estate has not established a causal connection between the insured automobile and the injury. Merely having arrived at the site of the accident in a vehicle does not create a causal connection between the vehicle and the injury in this case.

T.H.E. also argues that the court erred in ruling sua sponte for Butzberger's estate on the issue of UIM coverage because the only motion then before the court was T.H.E.'s motion for summary judgment. Because we hold that T.H.E. should have prevailed, we need not address this issue.

The estate also argues that the trial court erred by granting summary judgment on the issue of whether there was a valid UIM waiver. We need not decide this issue in light of our holding that Butzberger was not using the vehicle and was therefore not covered under the policy.

## ATTORNEY FEES

T.H.E. argues that the trial court abused its discretion in awarding the estate $8,500 in attorney fees because it provided only a very cursory breakdown of the hours spent on each activity. We reverse that award, but for different reasons.

In *Mahler v. Szucs*[34] our Supreme Court stated that "the absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record."[35] The court further held that findings of fact and conclusions of law are required to establish such a record.[36] There are neither findings nor conclusions as to fees before us. Thus, there is no basis for us to review the fee award.

In any event, an award of fees against T.H.E., given our holding in this case, is not warranted. Accordingly, we reverse that award.

---

[34] 135 Wn.2d 398, 957 P.2d 632 (1998).

[35] *Mahler*, 135 Wn.2d at 435 (citing *Smith v. Dalton*, 58 Wn. App. 876, 795 P.2d 706 (1990); *Rhinehart v. Seattle Times*, 59 Wn. App. 332, 798 P.2d 1155 (1990); *Bentzen v. Demmons*, 68 Wn. App. 339, 842 P.2d 1015 (1993); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 871 P.2d 1066, *review denied*, 124 Wn.2d 1018 (1994)).

[36] *Mahler*, 135 Wn.2d at 435.

The estate requests an award of attorney fees, for work below and on appeal. It is entitled to such fees from Allstate under *Olympic Steamship Co. v. Centennial Insurance Co.*[37] We remand for determination by the trial court of the reasonable amount of such fees.

We reverse both judgments and remand to the trial court for further proceedings consistent with this opinion.

AGID and APPELWICK, JJ., concur.

Review granted at 148 Wn.2d 1008 (2003).

---

[37] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991).