## A97A1228. ATLANTA POSTAL CREDIT UNION
## v. INTERNATIONAL INDEMNITY COMPANY.
### (494 SE2d 348)

RUFFIN, Judge.

International Indemnity Company ("International Indemnity") filed a declaratory judgment action to determine whether it had a duty to defend the Atlanta Postal Credit Union ("Credit Union") as an additional insured under a policy issued to National Vehicle Recovery of Georgia, Inc. ("National Vehicle"). International Indemnity and the Credit Union filed cross-motions for summary judgment. The trial court granted International Indemnity's motion and denied the Credit Union's motion. The Credit Union appeals, and because we find that the trial court should have granted summary judgment to the Credit Union, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The facts in this case, which are largely undisputed, are as follows. The Credit Union was a secured creditor of two automobiles previously owned by Deborah Kendrick. When Kendrick defaulted on her note with the Credit Union, it retained National Vehicle to repossess the vehicles. Kendrick informed two National Vehicle employees that one of the vehicles was located at her parents' house. When the National Vehicle employees arrived at the parent's house, they found the vehicle in the carport. As one of the employees, Donald Rainey, was checking the vehicle's identification number, Kendrick's father, Troy Buchanan, came out of the house "obviously upset" and "yelling [at them to] get off his property." The two employees drove away in the wrecker, leaving the vehicle in the Buchanans' carport.

Rainey then called Kendrick from the wrecker, explained the situation and requested that she call her father. According to Kendrick, after speaking with her mother, she explained to Rainey that it was not okay for him to drive up and repossess the vehicle. The National Vehicle employees nonetheless drove the wrecker up the driveway in a second attempt to repossess the vehicle. When Rainey exited the wrecker, Troy Buchanan again came out of the house, started screaming, and demanded that Rainey give his name. Rainey told Buchanan he was leaving and returned to the wrecker. Buchanan followed and began beating on the wrecker window with a portable phone. As the National Vehicle wrecker exited the driveway, Troy Buchanan suffered a fatal heart attack. Deborah Kendrick and Buchanan's surviving spouse sued the Credit Union, National

Vehicle and the two employees for, inter alia, wrongful repossession and wrongful death ("underlying action").

At the time of the incident, National Vehicle was insured under a business auto insurance policy issued by International Indemnity. The policy covered the wreckers used by National Vehicle in its business which, as described in the policy, is one that "[r]ecovers [v]ehicles" for banks and insurance companies. The policy provides that International Indemnity "will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Boldface omitted.) Under the policy, International Indemnity also insured "[a]nyone liable for the conduct of an insured described above . . . but only to the extent of that liability." Finally, the policy requires International Indemnity to defend any suit asking for such damages.

Although the parties eventually settled the underlying action, it remained unresolved whether the insurance policy required International Indemnity to pay the Credit Union's defense costs. Accordingly, International Indemnity filed the instant declaratory judgment action to determine the extent of such obligations under National Vehicle's policy. In granting summary judgment to International Indemnity, the trial court concluded, as a matter of law, that International Indemnity is under no obligation to reimburse the Credit Union for its defense costs because of certain unspecified exclusions in the policy, and because "[t]he factual circumstances of the underlying action do not set forth an accident or injuries 'arising out of ownership, maintenance or use' of the insured's [National Vehicle] vehicle."

1. "Whether an insurer is obligated to defend an action against its insured 'is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted.* Thus, the issue is not whether [the insured] is *actually liable* to the plaintiffs [in the underlying action]; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.' [Cits.]" (Emphasis in original.) *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 558 (481 SE2d 850) (1997).

In the underlying action, the plaintiffs alleged in their complaint that, inter alia, the National Vehicle employees were acting on behalf of the Credit Union when they attempted "to wrongfully repossess" a vehicle belonging to Kendrick. The plaintiffs further alleged that "[a]s a direct and proximate result of the Defendants' negligence[,] . . . Troy Buchanan sustained great physical and mental pain and

suffering, until his death, for which plaintiff [is entitled to damages]." Finally, Kendrick alleged that she "is entitled to recover from each of [the] defendants jointly and severally for wrongful repossession of her automobile and attempted repossession in an amount to be determined by a jury." In light of these allegations and the policy provisions at issue, we must determine (a) whether the policy provides coverage to its named insured, National Vehicle, for the alleged acts and injuries, and if so, (b) whether the Credit Union was liable for the alleged conduct of the National Vehicle employees.

(a) We find that, contrary to the trial court's order, the underlying action did set forth a claim for injuries resulting from an accident arising out of the use of National Vehicle's wrecker, which was a covered auto under the policy.

Because the use of the wrecker determines what injuries are covered under the policy, the definition of "use" is a central issue that must be resolved. "The applicable principles are settled. Insurance is a matter of contract, and the language used is to be accorded its general and ordinary meaning, bearing in mind that the contract is to be construed in accordance with *the intention and understanding of the parties*, and, in construing it, the court can go no further than a fair construction of the language used will permit. It is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company." (Citations and punctuation omitted; emphasis supplied.) *Cotton States Mut. Ins. Co. v. Smelcer*, 212 Ga. App. 376, 377 (441 SE2d 788) (1994).

This Court has, on numerous occasions, interpreted the policy provision at issue. Recently, in *Abercrombie v. Ga. Farm &c. Ins. Co.*, 216 Ga. App. 602 (454 SE2d 813) (1995), we addressed the issue of whether the injury resulted from the ownership, maintenance, or use of an uninsured motor vehicle. We found that "the policy clause which is being construed in this case 'is usually interpreted in a broad sense.'" Id. at 604. We further found that "'[u]se' while an admittedly elusive term, may be defined as to employ for some purpose." (Citations and punctuation omitted.) Id. The requirement that the injury resulted from the "use" of the vehicle does not "'require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. Almost any causal connection or relationship will do. . . .' [Cit.]" Id. Furthermore, "use" extends "'at least to the point, beyond physical contact, where control over the [vehicle] is easily or reasonably at hand, and particularly when it is still being "utilized."'" *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 4-5 (2)

(230 SE2d 70) (1976). "Each case turns on its precise individual facts. The question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the vehicle." (Citations and punctuation omitted.) *Ins. Co. of North America v. Dorris*, 161 Ga. App. 46, 47 (1) (288 SE2d 856) (1982).

In *Booker*, a sanitation worker who was located approximately 30 feet from his garbage truck was struck by an uninsured motorist while he was walking to collect refuse. The uninsured motorist policy at issue covered trucks used in the worker's business, which the policy described as " 'Sanitary Pick Up' and 'Garbage Ashes or Refuse Collecting including completed operations.' " *Booker*, supra at 3. The issue before this Court was whether the worker was an insured person under the uninsured motorist statute, which included " 'any person who uses . . . the motor vehicle to which the policy applies.' " Id. at 4 (citing former Code Ann. § 56-407.1 (b) (Ga. L. 1963, p. 588, as amended)). After reviewing several cases in which the "use" of a vehicle was at issue, we determined that: "[i]n defining the word 'use' of the garbage truck, we must look to the contemplation of the parties in entering into the insurance contract. It is clear from the insurance contract that this vehicle was to be used in the business of [garbage collecting]. Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on [the] truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage." Id. at 7. Accordingly, we found that when the worker was injured, he was using the truck within the meaning of the policy and statute. Id.

A similar inquiry leads us to conclude that, although there was no alleged physical contact between Buchanan and the insured wrecker in this case, the complaint alleges injuries, which as required by the policy, were "caused by an accident and resulting from the . . . use of a covered auto." (Boldface omitted.) It is clear from the insurance policy that the wrecker was going to be used by National Vehicle in its business of recovering vehicles for banks. See id.; *Smelcer*, supra. The parties must have contemplated that in pursuit of its business, National Vehicle would encounter problems recovering vehicles and that, in some instances, the mere attempt to repossess vehicles would enrage the car owners and their families. The wrongful repossession alleged in the underlying case, if not caused directly by the wrecker, certainly "grew out of, or flowed from the use of the vehicle." (Citation and punctuation omitted.) *Dorris*, supra at 47. Similarly, even though there was no alleged physical contact between the wrecker and Buchanan which caused his pain and suffering, the plaintiffs alleged that the pain and suffering was

"a direct and proximate result of the Defendants' negligence[,]" which included the purported wrongful repossession. Even if such claims were groundless, they fall within the policy coverage and International Indemnity had a duty to defend National Vehicle against the claims. See *Penn-America*, supra.

International Indemnity nevertheless contends that the claims were not covered because the policy only covered physical injuries and because the complaint only alleged intentional acts which do not constitute accidents under the policy. We disagree.

The policy expressly provides that it not only covered claims for bodily injury, but also claims for property damage which is defined as "damage to or loss of use of tangible property." Thus, it is clear that the policy was not limited to claims for physical injuries. Furthermore, the complaint was not limited to claims for intentional acts. "[T]he term 'wrongful,' when used as an element of [the tort of wrongful repossession], is used in [a] . . . comprehensive sense to include that conduct which is in contravention of some legal duty owed to the party from whose possession the vehicle is being taken. [Cits.]" *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 113 (2) (b) (387 SE2d 144) (1989). Such claims can be based on negligent acts as were alleged in this case. See id. at 112.

Accordingly, because it is clear that the complaint asserted a claim for negligence arising out of the use of the covered wrecker, International Indemnity was required, as a matter of law, to provide coverage to National Vehicle for the claim.

(b) In order for the Credit Union to establish that it too was entitled to a defense by International Indemnity, the Credit Union must show, as required by the policy, that it was "liable for the conduct" of National Vehicle. In this regard, plaintiffs alleged in their complaint that the Credit Union is liable for the acts of the other defendants "under the Doctrine of Respondeat Superior." In *Aetna Cas. &c. Co. v. Empire Fire &c. Co.*, 212 Ga. App. 642 (1) (a) (442 SE2d 778) (1994), we examined the same policy provision and ruled that because the complaint alleged liability under the doctrine of respondeat superior, the defendant was an insured under the policy. Accordingly, "[s]ince the complaint[ in this case] allege[s] that [the Credit Union] is liable for [National Vehicle's] negligence on the basis of respondeat superior, [the Credit Union] fits within the policy's definition of an 'insured.' [Cit.]" Id. at 643-644. Furthermore, contrary to International Indemnity's arguments on appeal, the issue is not whether the Credit Union is *actually liable* to the plaintiffs under this doctrine; the issue is whether such a claim has been asserted to invoke coverage and the duty to defend under the policy. See *Penn-America*, supra. Again, such a claim has been asserted.

2. Although the trial court did not specify in its order which

policy exclusions precluded coverage to the Credit Union, International Indemnity argues that coverage is excluded by the policy provision stating that "[t]his insurance does not apply to . . . [l]iability assumed under any contract or agreement." International Indemnity argues that because the Credit Union's liability arises as a result of its contract with National Vehicle to repossess the vehicle, this exclusion precludes coverage to the Credit Union. We disagree.

Although a contract created the working relationship between the Credit Union and National Vehicle, the plaintiffs did not predicate the Credit Union's alleged culpability on any assumption of liability provided in the contract. Rather, as discussed in Division 1 (b), it is clear that the plaintiffs grounded their allegations against the Credit Union on the theory of respondeat superior. This theory is not dependent on any contractual assumption of liability, but merely provides for indirect, vicarious liability of a master for the torts of his servant. See OCGA § 51-2-2; *Gaskins v. Gaona*, 209 Ga. App. 322, 323 (2) (433 SE2d 408) (1993). Accordingly, we find that the cited exclusion does not preclude coverage in this case.

3. Finally, we find no merit in International Indemnity's argument that the Credit Union has not incurred any damages because the Credit Union's own policy with another insurer provided primary coverage. Inasmuch as the wrecker involved was owned by National Vehicle, the International Indemnity policy clearly provided primary coverage. The record is also clear that the Credit Union's own policy provides only excess coverage under the circumstances of this case. As International Indemnity was the primary insurer, it also had the duty to defend. See *Commercial Union Ins. Co. v. Ins. Co. of North America*, 155 Ga. App. 786 (3) (273 SE2d 24) (1980).

Because the undisputed facts, viewed in the light most favorable to International Indemnity, show that it had the duty to defend the Credit Union in the underlying action, the trial court erred in granting summary judgment to International Indemnity and in denying the Credit Union's motion for summary judgment. See *Lau's Corp.*, supra.

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 22, 1997 — ▮

*Greene, Buckley, Jones & McQueen, Harold S. White, Jr., William D. Matthews*, for appellant.
*James B. Gurley*, for appellee.