A01A0530. OLD REPUBLIC UNION INSURANCE COMPANY
v. FLOYD BEASLEY & SONS, INC. et al.
(551 SE2d 388)

RUFFIN, Judge.

Dorothy Gwinett and Sharlae Denise Tucker sued Floyd Beasley & Sons, Inc. ("Beasley") asserting that Beasley is liable for injuries arising out of an automobile collision caused by the company's alleged negligence. At the time of the collision, Beasley was insured under a commercial general liability policy issued by Old Republic Union Insurance Company ("Old Republic") and a business automobile liability insurance policy issued by National Casualty Company ("National Casualty"). Old Republic and National Casualty filed declaratory judgment actions against Beasley, Gwinett, and Tucker, asking the trial court to declare that they have no duty to defend the actions and that no coverage exists under their respective policies. The trial court consolidated the two actions, and following a jury trial, the jury returned a special verdict finding that the claims arising from Beasley's alleged negligence were not covered under either policy. However, the trial court subsequently granted Gwinett's and Tucker's motions for judgment notwithstanding the verdict (judgment n.o.v.) and conditional new trial, finding coverage existed as matter of law under Old Republic's policy. Old Republic appeals these rulings, and for reasons that follow, we affirm.[1]

1. A trial court should grant a motion for judgment n.o.v. " 'only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict.' "[2]

The relevant evidence in this case is undisputed and shows that Beasley is a logging company. In February 1995, a Beasley employee was driving one of Beasley's tractor trucks on a local highway pulling a semitrailer loaded with a piece of logging equipment. As the driver

---

[1] Beasley has not filed a brief in this appeal.

[2] *Time Warner Entertainment Co. v. Six Flags Over Ga.,* 245 Ga. App. 334, 341 (1) (537 SE2d 397) (2000).

approached an intersection, two of the tires on the semitrailer blew out. The driver pulled off the road less than 50 yards from the intersection and discovered that the u-bolts on the trailer, which hold the axle in place, were broken. The driver and another employee unloaded the logging equipment from the semitrailer, detached the trailer from the truck, and left the trailer on the side of the road.

The trailer, which could not be moved in its state of disrepair, remained on the roadside for approximately three weeks while Beasley waited for a part to repair it. On March 2, 1995, before the trailer was repaired, a fatal automobile accident occurred at the intersection near the location where the trailer was parked. The parties involved in the accident, Gwinett and Tucker, sued Beasley, alleging that their damages were caused by the logging company's negligence in leaving the unattended trailer parked for an extended period of time in a place where it obscured the view of oncoming traffic.

Beasley's liability policy issued by Old Republic generally provides coverage for "those sums that [Beasley] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by accidents. However, the policy excludes coverage for bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . [Beasley]." Use includes operation and " 'loading or unloading.' " The term "auto" is defined to include a "trailer or semitrailer designed for travel on public roads." It is undisputed that the subject semitrailer was designed for travel on the highway.

Based on this exclusion, Old Republic asked the trial court to declare that no coverage existed under the policy. The trial court submitted the matter to a jury which, following trial, returned a special verdict answering the following interrogatories:

> 2. Do the claims of Gwinett and Tucker arise out of the ownership, maintenance, or use of Beasley's semi-trailer? [The jury responded, "Yes."] 3. Was the parking of Beasley's semi-trailer on the side of the road a covered "occurrence" as contemplated by the insuring agreement of Old Republic? [The jury responded, "No."][3]

In granting judgment n.o.v., the court reasoned that interrogatory number three was too limited because it should have asked whether parking the trailer "coupled with the subsequent injury is a

---

[3] The jury also found that the automobile liability policy issued by National Casualty did not provide coverage because the semitrailer was not attached to an insured tractor truck at the time of the collision.

covered occurrence."[4] The court further found that construction of the insurance policy was a "question[ ] of law that should have been decided by the Court" and "[t]he time of the last use of the semitrailer and its attachment to the tractor are too remote for this 'occurrence' to fall within Old Republic's contractual exclusion."

On appeal, Old Republic asserts that the trial court erred in granting judgment n.o.v. because the evidence showed that Gwinett's and Tucker's claims are excluded by the plain language of the policy's "auto" exclusion. Inasmuch as the semitrailer at issue is indisputably an "auto" under the policy, the overriding question is whether the claimed injuries arose "out of [Beasley's] ownership, maintenance, use or entrustment to others" of the trailer.

In resolving this question, we note initially that, " '[i]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms.' "[5] Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous.[6] A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction.[7] A trial court may not charge a jury with the responsibility of construing the policy " 'unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.' "[8]

In this case, the parties dispute whether the injuries claimed by Gwinett and Tucker arose out of Beasley's "use" of the trailer. In moving for judgment n.o.v., Gwinett and Tucker argued that the injuries did not arise out of Beasley's use of the trailer because the logging company had parked the trailer on the roadside approximately three weeks before the accident and had not utilized it for any purpose since that time. They contended that Beasley's last "use" of the trailer, parking it on the roadside, was too remote to be considered the cause of the accident. Old Republic responded that there was sufficient evidence for the jury to find in its favor because "the parking of the semitrailer on the side of the road occurred as a result of the use of the semitrailer, and the accident which followed grew out of or flowed from such use." Old Republic further responded that, even though the trailer had been parked on the roadside for approximately three weeks before the accident, temporal proximity alone is

---

[4] (Emphasis omitted.)
[5] *Sapp v. State Farm Fire &c. Co.*, 226 Ga. App. 200, 201 (1) (a) (486 SE2d 71) (1997).
[6] See id.
[7] See id. at 201-202.
[8] Id.

not determinative of remoteness; physical proximity is also relevant and the trailer was located at the scene of the accident.

This is not a novel issue. Although "an exact or bright-line definition of the term ['use'] is elusive, and is not capable of a definition which will leave everyone comfortable,"[9] in numerous cases our appellate courts have considered whether an accident arose out of the "use" of a vehicle as that term is contemplated under various insurance policies.[10] The factors addressed in those cases should assist us here.

First, we must determine whether, at the time of the accident, the trailer was "being 'utilized' in the plain and ordinary sense of the word."[11] In other words, we must consider whether the trailer was still operating as a trailer at the time of the accident.[12] Such is relevant because "the idea of 'use' does not embrace 'remoteness.' "[13]

It is clear to us that, at the time of the accident, the trailer was not being utilized as a trailer. The policy does not define "trailer," but Merriam-Webster's Collegiate Dictionary tells us that a "trailer" is "a nonautomotive vehicle designed to be hauled by road: as . . . a vehicle for transporting something."[14] In this case, the trailer was not loaded or attached to any vehicle that could haul it, and it lay broken on the roadside. Accordingly, though it was still a trailer, it was not being utilized as such when the accident occurred. Indeed, the undisputed evidence establishes that the trailer was last utilized as a trailer approximately three weeks before the accident when it was loaded with logging equipment and being hauled by a truck.[15]

We must also inquire into issues of physical proximity.[16] This involves more than evaluating how close the trailer was to the accident scene, because "use" also embraces the notion that the person

---

[9] (Punctuation omitted.) *Roberts v. Burke County School Dist.*, 267 Ga. 665, 667 (482 SE2d 283) (1997).

[10] See, e.g., id. (whether death of a child who was killed while walking along a heavily traveled road arose out of the "use" of a school bus which had earlier dropped him off at an unauthorized spot); *Atlanta Postal Credit Union v. Intl. Indem. Co.*, 228 Ga. App. 887 (494 SE2d 348) (1997) (whether fatal heart attack arose out of the "use" of a wrecker employed to repossess a car from the home of the deceased); *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3 (230 SE2d 70) (1976) (whether injuries of sanitation worker who was struck by a passing vehicle while collecting garbage arose out of the "use" of his garbage truck which was parked approximately 30 feet away).

[11] *Roberts*, supra at 667.

[12] See id.

[13] Id.

[14] Merriam-Webster's Collegiate Dictionary (10th ed. 1993), p. 1251.

[15] Cf. *Dolly Griffin & Assoc. v. Intl. Indem. Co.*, 220 Ga. App. 376 (469 SE2d 464) (1996) (finding that jury issue remained concerning lapse of time between date insured truck left uninsured trailer on roadside and date of accident allegedly caused by negligent parking of the trailer on the roadside).

[16] See *Roberts*, supra.

using the trailer had control over it or that such control was reasonably at hand.[17] Again, while the trailer was parked near the accident scene and was alleged to have caused the accident, it does not appear that anyone was operating the trailer when the accident occurred, that anyone had control over the trailer, or that anyone from Beasley was reasonably at hand.

Finally, we consider "the nature of the conduct which caused the situation of jeopardy."[18] Herein lies the crux of Old Republic's argument that the trailer was in use. Old Republic asserts that the drivers' obstructed view was caused by Beasley negligently parking the trailer on the roadside and that "had it not been for [this] 'use' of the semitrailer, the accident would not have happened." Gwinett and Tucker contend that the obstructed view was caused by Beasley's failure to remove the trailer within a reasonable period of time, not the use of the trailer. Significantly, this contention echos Gwinett's and Tucker's allegations in their respective complaints against Beasley,[19] and the failure to relocate the trailer from the roadside "is removed from the *actual operation* of the [trailer]."[20] Because Old Republic's initial duty to defend the lawsuits turns on the allegations of the complaints asserted against Beasley, we look to the complaints to determine whether the claims are covered by the policy, rather than to Old Republic's characterization of those claims.[21]

Under the circumstances, we do not believe that the alleged injuries of Gwinett and Tucker arose out of Beasley's use of the trailer, as that term is contemplated in the policy. Again, at the time of the accident, the trailer was not being utilized as a trailer and had not been for some time, and nobody was nearby to operate the trailer. In addition, Beasley's failure to remove the trailer from the roadside did not constitute actual operation of the trailer. We are left only with the fact that the dormant trailer was located near the accident scene and allegedly caused the accident.

Moreover, to the extent that the term "use" is susceptible to two reasonable interpretations, we resolve the conflict in favor of Beasley. This is because under the rules of contract construction, the policy is construed against Old Republic as the drafter of the policy and any

---

[17] See id.; *Atlanta Postal*, supra at 889; *Booker*, supra at 4-5.

[18] *Roberts*, supra.

[19] In their respective complaints against Beasley, Gwinett and Tucker allege, inter alia, that Beasley's failure to remove the trailer within 48 hours constituted negligence per se as a violation of OCGA § 32-6-2 (4), which makes it "unlawful for any person to park or *leave unattended* any vehicle upon the right of way of any public road on the state highway system for over 48 hours." (Emphasis supplied.)

[20] (Emphasis supplied.) *Roberts*, supra at 668.

[21] See *Ga. Farm &c. Ins. Co. v. Vanhuss*, 243 Ga. App. 26 (532 SE2d 135) (2000).

exclusions from coverage are strictly construed.[22] Construing the policy in this way, we conclude, as a matter of law, that Gwinett's and Tucker's alleged injuries did not arise out of the use of the trailer. Accordingly, the matter should not have been submitted to the jury, and the trial court did not err in granting the defendants' motion for judgment n.o.v. on this issue.

2. Old Republic also asserts that the auto exclusion applies because the accident arose out of Beasley's entrustment of the semi-trailer to another. According to Old Republic, this exclusion precludes coverage "because Gwinett and Tucker seek to hold the insured liable under the theory that the person who parked the semitrailer on the side of the road was an alleged employee of the insured acting within the scope of his employment." We disagree. Old Republic has confused the concepts of negligent entrustment and respondeat superior. The fact that Gwinett and Tucker seek to impute the negligence of Beasley's agent to Beasley does not mean that they are alleging that Beasley negligently entrusted the semitrailer to the agent.[23] A plain reading of both complaints against Beasley reveals that neither plaintiff alleges that Beasley negligently entrusted the trailer to anyone.

3. Finally, Old Republic summarily asserts that the injuries "also arose out of the 'ownership' of an auto." Because this assertion is unsupported by argument or citation of authority, it is deemed abandoned.[24]

4. In light of our decision that the trial court did not err in granting the defendants' motions for judgment n.o.v., there is no need for a new trial, and Old Republic's remaining assertions of error are therefore moot.[25]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 25, 2001 —
RECONSIDERATION DENIED JULY 19, 2001 —

*Sherry S. Harrell*, for appellant.
*Callaway, Neville & Brinson, William J. Neville, Jr., Franklin, Taulbee, Rushing, Snipes & Marsh, Troy W. Marsh, Jr., William K.*

---

[22] See *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 296-297 (2) (474 SE2d 46) (1996); *Sapp*, supra.

[23] See generally OCGA § 51-2-1 (stating basis for imputation of negligence).

[24] See Court of Appeals Rule 27 (c) (2).

[25] See OCGA § 9-11-50 (c) (addressing conditional grant of new trial).

*McGowan, Howard E. Spiva, Cecil C. Davis, Spivey, Carlton & Edenfield, J. Franklin Edenfield, James R. Gardner*, for appellees.