**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 20, 2019**

# In the Court of Appeals of Georgia

A19A1447. WILKINSON et al. v. GEORGIA FARM BUREAU
 MUTUAL INSURANCE COMPANY.

MILLER, Presiding Judge.

Barbara Brown Wilkinson and Egbert Joseph Wilkinson appeal from the trial

court's order granting Georgia Farm Bureau Mutual Insurance Company's ("GFB")

motion for summary judgment, arguing that summary judgment was improper

because the injuries sustained by Barbara from a traffic accident in a residential

driveway were covered under GFB's homeowner's insurance policy. We conclude

that the trial court erred in its determination that Barbara's injuries were excluded

from coverage under GFB's homeowner's insurance policy, and we therefore reverse

the trial court's grant of summary judgment.

Summary judgement is proper when there is no genuine issue of material

fact and the movant is entitled to judgment as a matter of law. In

reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

(Citations and punctuation omitted.) *Swint v. Alphonse*, 348 Ga. App. 199, 200 (820 SE2d 312) (2018).

So viewed, the record shows that Paul Buchanan and Egbert Wilkinson were friends and coworkers. On August 18, 2015, Buchanan purchased a 1994 Ford F350. Egbert asked Buchanan if he could "look at" the truck, and Buchanan agreed. According to Buchanan, the Wilkinsons were not going to test drive the truck but only wanted to look at the truck. On September 30, 2015, at approximately 8:30 p.m., Egbert and Barbara went to Buchanan's house to look at the truck. Buchanan drove the truck forward approximately eight feet from where it was parked in his driveway so that the Wilkinsons could walk around the vehicle to inspect it. The truck, which was still in front of Buchanan's garage in the driveway, was parked on an incline and facing the street. Buchanan turned the truck on, placed it in neutral, and set the

2

emergency brake. As Egbert and Buchanan stood outside the truck conversing with each other, Barbara sat in the driver's seat of the truck. Barbara then exited the truck and spoke with Buchanan. As Buchanan and Barbara went to inspect the truck's engine, Buchanan told Barbara to pull the truck's "hood latch," and warned her to not pull the emergency brake. Barbara looked under the truck's dashboard, pulled the emergency brake, and the truck "took off," after which Buchanan saw her lying under the truck. According to Buchanan, Barbara had been holding on to the "door jamb" when she fell, and the truck rolled over Barbara's ankles as it traveled down the driveway. Buchanan ran after the truck, jumped inside, and stopped the truck. Barbara allegedly sustained multiple injuries, including an open fracture of her left ankle, a right shoulder avulsion fracture, fractures of the tibia and fibula, and a left knee effusion.

The Wilkinsons filed suit against Buchanan, asserting claims for negligence, damages, and loss of consortium. GFB, Buchanan's homeowner's insurance company, filed a complaint for declaratory judgment to determine whether it was obligated to defend Buchanan in the Wilkinsons' suit against him. Specifically, GFB sought declarations that (1) the policy issued to Buchanan does not provide coverage for bodily injuries caused by an intentional act; (2) the policy does not provide

3

coverage for injuries which are reasonably expected or intended by the insured; (3) the policy does not provide coverage for Buchanan for losses arising out of any intentional or criminal act; (4) the policy excludes coverage for injuries arising out of or in connection with a business; and (5) the policy excludes coverage for injuries arising out of the ownership, maintenance, use, loading or unloading of motor vehicles.[1] The Wilkinsons counterclaimed, seeking a declaratory judgment that their claims raised in the separate civil action were covered under GFB's homeowner's policy.

GFB subsequently filed a motion for summary judgment, and the trial court granted GFB's motion. The trial court rejected GFB's claim that the policy excluded coverage for injuries arising out of a business transaction, because it found that Buchanan was not in the business of selling or repairing vehicles. The trial court found, however, that the truck was in "use" at the time of the incident because "[t]he truck was being used . . . to demonstrate its function and operability," "and that such use resulted in [Barbara]'s injuries." This appeal followed.

[1] GFB subsequently withdrew its requests for declaratory judgments that the policy excludes coverage for bodily injuries arising from an intentional act, that coverage is excluded for injuries that are reasonably expected or intended by an insured, and that the policy does not provide coverage for losses arising from intentional or criminal acts of the insured.

4

In their sole enumeration of error, the Wilkinsons argue that the trial court erred in granting summary judgment because the incident giving rise to Barbara's injury did not arise from the use of a motor vehicle. We agree.

It is axiomatic that

> an insurance policy is simply a contract, the provisions of which should be construed as any other type of contract, and so, when the provisions of an insurance policy are clear and unambiguous, we attribute to those provisions their plain meaning. An insurer is entitled, of course, to define terms used in its insurance policies as it sees fit, and it may choose to define a term in an unusual and uncommon way. But unless the policy itself indicates that a term is used in an unusual sense, we attribute to that term its usual and common meaning.

(Citations and punctuation omitted.) *Taylor Morrison Svcs. Inc., v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 459-460 (1) (746 SE2d 587) (2013). "But if a contract *is* ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. And contractual provisions are ambiguous when they are susceptible to more than one meaning, even if each meaning is logical and reasonable." (Citations and punctuation omitted.) *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 286-287 (1) (779 SE2d 55) (2015).

5

In cases of ambiguity, there are three well-known rules of contract construction that apply: (1) ambiguities are strictly construed against the insurer as the drafter; (2) exclusions from coverage the insurer seeks to invoke are strictly construed; and (3) the contract is to be read in accordance with the reasonable expectations of the insured when possible. Indeed, when a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured. Furthermore, exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage.

(Citations and punctuation omitted.) Id. at 287 (1). In this case, the parties dispute whether Barbara's injuries arose out of the use of the truck. The policy exclusion pertinent to this matter states that GFB would not provide coverage for bodily injuries "arising out of . . . [t]he ownership, maintenance, use, loading or unloading of motor vehicles . . . owned or operated by or rented or loaned to an insured[.]" The phrase "use of a motor vehicle" is not defined in GFB's insurance policy. This Court has, however, in similar circumstances defined the term "use" as "to employ for some purpose." (Citation omitted.) *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 112 (1) (722 SE2d 923) (2012). Still, we have been careful to note that "an exact

6

or bright-line definition of the term is elusive, and is dependent to a great extent on the circumstances of the case." (Citation and punctuation omitted.) Id.

> Whether an injury arose out of [the] use of a motor vehicle, turns on consideration of (i) the physical proximity of the injury site to the vehicle, (ii) the nature of the conduct which caused the situation of jeopardy, and (iii) whether the vehicle was being utilized in the plain and ordinary sense of the word. In evaluating physical proximity, we consider more than how close the truck was to the accident scene, because use also embraces the notion that the person using the truck had control over it or that such control was reasonably at hand.

(Citations and punctuation omitted.) Id. at 112-113 (1). "Thus, while the term 'use' of a motor vehicle does extend beyond actual physical contact, it does not imply remoteness, and the term contemplates use of the motor vehicle *as a vehicle* at the time of the injury." (Citation and punctuation omitted.) *Wingler v. White*, 344 Ga. App. 94, 101 (1) (808 SE2d 901) (2017).

Applying these principles in the instant case, the trial court erred in determining that the truck was in "use" at the time of the accident so as to exclude coverage for Barbara's injuries. It is true that the evidence shows that Buchanan's truck was at or near the location of the accident, that the accident was caused by Barbara pulling the truck's emergency brake, and that at the time of the accident,

7

Buchanan and Barbara were examining its components. However, the evidence fails to show that the vehicle was in "use" *as a vehicle* at the time of the accident. Indeed, the truck was parked in Buchanan's driveway and had not been employed for any purpose at the time of Barbara's injury. Instead, the evidence merely shows that the parked truck was being inspected at the time of the accident. Thus, it cannot be said that the vehicle was in "use" as a vehicle at the time of Barbara's injuries. See *Lancer Ins. Co. v. United Nat. Ins. Co.*, 294 Ga. App. 261, 262-263 (668 SE2d 865) (2008) (holding that the vehicle was not employed for any purpose where the driver pulled off the roadway and exited the vehicle prior to the accident); *Assurance Co. of America v. Bell*, 108 Ga. App. 766, 772 (3) (134 SE2d 540) (1963) (holding that the stationary vehicle was not in use at the time of the accident when the infant pulled the emergency brake which caused the vehicle to roll downhill).

The cases upon which GFB relies in support of its contention that Buchanan's truck was being "used" as a motor vehicle at the time of the accident are distinguishable from the instant case. In *Hays*, the truck was being driven at the time of the accident, and this Court found that the act of driving the truck was the very cause of the accident. *Hays*, supra, 314 Ga. App. at 111-113 (1). Similarly, in *Ivey v. First of Georgia Ins. Co.*, 209 Ga. App. 784 (434 SE2d 556) (1993), which concerned

8

the use of an airplane, the aircraft was being flown at the time of its crash. Id. at 785-786. Thus, we concluded that the parties "were using the plane at the time of the tragic accident." Id. at 786. In the instant case, however, the truck was not being used as a vehicle, but was instead parked in a driveway as the Wilkinsons "looked" at it. Under the facts of this case, it cannot be said that the vehicle was in use as a vehicle at the time of the accident, and thus the trial court erred by determining that GFB's homeowner's insurance policy barred its obligation to defend Buchanan in the Wilkinsons' suit against him.

Accordingly, we reverse the trial court's order granting summary judgment to GFB.

*Judgment reversed. Rickman and Reese, JJ., concur*.